FILED

14 AUG 22 PM 3: 49

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DL7    DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRST FINANCIAL SECURITY, INC., a Delaware corporation, | CASE NO. 14-CV-1521-BEN (BGS) |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS** |
| vs. | [Docket No. 8] |
| FREEDOM EQUITY GROUP, LLC, a California limited liability company, | |
| Defendant. | |

Before this Court is the Motion to Dismiss filed by Defendant Freedom Equity Group, LLC (FEG). (Docket No. 8). For the reasons stated below, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff First Financial Security, Inc. (FFS) is a life insurance brokerage agency which sells life insurance policies through a national sales force of independent contractors. (Compl. ¶¶ 6-7). The sales force is organized into teams, each of which has a hierarchical structure with a tiered compensation plan. (*Id.* ¶ 8). FEG is also a life insurance brokerage company using a similar independent contractor model. (*Id.* ¶ 11). The two companies are competitors. (*Id.* ¶ 12).

All of FFS's contractors enter into an identical Sales Contractor Agreement and FFS Terms and Conditions (collectively, "SC Agreement"). (*Id.* ¶ 13 & Ex. A). The SC Agreement imposes restrictions on the ability of contractors to induce or attempt

to induce any FFS contractor to terminate his or her affiliation with FFS. (*Id.* ¶ 14 & Ex. A). In relevant part, the SC Agreement states that:

> Sales Contractor covenants that he/she will not, at any time during the term of this Agreement, and for a period of two (2) years thereafter, directly or indirectly:
>
> i) induce or attempt to induce any person who is contractually affiliated with FFS as a Sales Contractor or in other capacity, or any member of FFS's administrative staff, to terminate their relationship with FFS; or
>
> ii) hire, induce or attempt to hire or induce any such persons to sell or solicit products and services that are competitive with the Products and Services for any person or entity other than FFS.

(*Id.* Ex. A § C(3)).

The SC Agreement also prohibits contractors from inducing, or attempting to induce, FFS customers to terminate or reduce coverage under their policies. (*Id.* ¶ 15). In relevant part:

> Sales Contractor covenants that he/she will not, at any time during the term of this Agreement, and for a period of two (2) years thereafter, directly or indirectly, individually or in concert with another, induce or attempt to induce any Customer to terminate, reduce coverage under or replace any of the [FFS] Products and Services that have been sold by Sales Contractor or his/her Downline Sales Contractors.

(*Id.* Ex. A § C(2)).

The SC Agreement also contains restrictions on the use, dissemination, or revelation of confidential information and trade secrets, including customer lists and lists of FFS contractors. (*Id.* ¶ 16 & Ex. A § C(4)). It requires the return of all documents, files, and lists containing such information upon termination of the agreement. (*Id.* ¶ 17 & Ex. A § C(4)).

Contractors are also required to acknowledge that all members of the sales network have executed identical agreements, and that inducing or attempting to induce a breach constitutes wrongful interference with contractual rights of FFS with that member. (*Id.* ¶ 19 & Ex. A § C(6)).

Two of FFS's sales contractors were Gilles Moua and Mai Lee. (*Id.* ¶ 21). Moua was an "Executive Field Chairman," the highest compensation level of the FFS compensation plan. (*Id.* ¶ 24).

14cv1521

1    FFS alleges on "information and belief" that in April 2014, "Moua, Lee or both

2  of them were in talks with FEG concerning the mass solicitation of FFS contractors to

3  work at FEG, in violation of the SC Agreement." (*Id.* ¶ 20). FFS asserts that this belief

4  is based on "among other things, information learned by FFS in the course of

5  negotiating with Moua concerning a dispute over compensation." (*Id.*)

6    FFS alleges that it learned on or about May 10, 2014 that Moua and Lee were

7  "soliciting and inducing FFS sales contractors to leave FFS and join FEG." (*Id.* ¶ 21).

8  Moua and Lee resigned on May 10, 2014. (*Id.* ¶ 22). The same day, Moua and Lee

9  allegedly held a meeting for FFS sales contractors at their home. (*Id.* ¶ 23). They

10 "invited certain key team members" to the meeting and encouraged Moua's team

11 members to terminate their relationship with FFS to work for Moua and Lee at FEG.

12 (*Id.*) FFS alleges that it had received 250 sales contractor resignations by May 12,

13 2014; approximately 500 resignations by May 13; over 600 resignations by May 14;

14 and over 1,300 resignations by May 22. (*Id.* ¶¶ 25-28). FFS asserts that there were

15 only 732 sales contractor resignations from 2003 to April 2014. (*Id.* ¶ 29). FFS alleges

16 that Moua and Lee breached their SC Agreement by recruiting other contractors during

17 the SC Agreement, and that the other contractors breached their agreements by

18 recruiting lower-level contractors. (*Id.* ¶ 30). FFS claims, based on projected growth

19 in revenues from Moua and Lee's sales team, that it will suffer more than $1.6 million

20 in damages. (*Id.* ¶ 31).

21    On May 15, 2014, FFS sent FEG a letter informing FEG of the SC Agreement,

22 and Moua and Lee's breaches. (*Id.* ¶ 33 & Ex. B). The letter included a copy of the

23 SC Agreement. (*Id.* ¶ 33 & Ex. B). Among other things, the letter demanded written

24 confirmation from FEG that it would not interfere with FFS's contractual relationship

25 with Moua or any other current or former FFS representative. (*Id.* Ex. B).

26    FEG responded in a letter dated May 23, 2014. (*Id.* ¶ 34 & Ex. C). As

27 characterized by FFS, the letter confirmed that Moua's team was at FEG, admitted that

28 FEG is an FFS competitor, and indicated that FEG would continue working with Moua

1  and other FFS sales contractors. (*Id.* ¶ 34).

2  FFS and FEG both serve as a "Master General Agent" for insurance carrier
3  National Life Group, known as "LSW," allowing them to sell policies underwritten by
4  LSW. (*Id.* ¶¶ 35-37). The contract between LSW and FFS prohibits recruiting agents
5  already appointed to do business with LSW. (*Id.* ¶ 38). FFS alleges that FEG and
6  LSW "likely have the same, or a substantially similar agreement." (*Id.*)

7  FFS also alleges that it maintains confidential customer lists and contractor lists
8  which it asserts have independent economic value. (*Id.* ¶¶ 39-42). FFS demanded that
9  Moua and Lee return all confidential FFS information, including customer lists and
10  sales contractor lists. (*Id.* ¶ 43). They allegedly have not done so. (*Id.* ¶¶ 44-46).

11  On June 23, 2014, FFS filed a Complaint asserting: 1) intentional interference
12  with contractual relations and 2) violation of California's Business and Professions
13  Code §§ 17200 *et seq.* (Docket No. 1). They seek damages, injunctive relief, costs,
14  and expenses. (*Id.* at p. 10-11).

15  With respect to the first claim, FFS contended that FEG intentionally interfered
16  with FFS's contractual relationship with FFS sales contractors because:

17  (1) there was a valid contract between FFS and the FFS sales contractors;
(2) FEG had knowledge of the contract; (3) FEG intentionally induced a
18  breach of the contractual relationship between FFS and the FFS sales
contractors; (4) there was an actual breach of the contractual relationship
19  between FFS and the sales contractors; and (5) the breach has caused, and
will continue to cause, substantial damage to FFS.
20
(*Id.* ¶ 48). It alleges that, at all "material times, FEG had knowledge of the SC
21
Agreement and that Moua and his team members that joined FEG breached the SC
22
Agreement." (*Id.* ¶ 50). It alleged that despite this knowledge, FEG "has, and
23
continues to, intentionally induce FFS sales contractors to breach the SC Agreement."
24
(*Id.* ¶ 51). It states that "FEG has indicated that it will continue its relationship with
25
Moua, Lee and the illegally recruited FEG sales contractors that have left FFS to join
26
FEG." (*Id.*)
27
With respect to the second claim, FFS alleges that FEG has engaged in
28
"wrongful and/or unlawful acts or practices in the conduct of a business" that constitute

unfair competition within the meaning of the statute. (*Id.* ¶ 57). It claims that these acts or practices

> include, but are not limited to:
> (i) Intentional interference with the performance of a pre-existing contract that the Defendant had knowledge of;
> (ii) Intentionally and wrongfully inducing the breach of the contract;
> (iii) Benefitting from use of FFS's confidential trade secrets, including customer lists and sales contractor lists that former FFS sales contractors now at FEG have refused to return to FFS;
> (iv) Competing against FFS by poaching an entire sales team that FFS itself assembled; and
> (v) Causing significant damages to FFS in an amount that cannot be calculated precisely at this time, but which is estimated to exceed $1,600,000 annually.

(*Id.*)

Defendant filed the instant motion to dismiss on July 15, 2014, asserting that Plaintiff failed to state a claim upon which relief could be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff responded on August 11, 2014. (Docket No. 11). Defendant replied on August 18, 2014. (Docket No. 12).

## LEGAL STANDARD

### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court may grant a motion to dismiss if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. FED. R. CIV. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). Under this standard, dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter

1   complained of, or if the complaint lacks a cognizable legal theory under which relief
2   may be granted. *See Twombly*, 550 U.S. at 556.

3   In analyzing a pleading, the Court sets conclusory factual allegations aside,
4   accepts all non-conclusory factual allegations as true, and determines whether those
5   non-conclusory factual allegations accepted as true state a claim for relief that is
6   plausible on its face. *See Iqbal*, 556 U.S. at 678-79; *Sprewell v. Golden State Warriors*,
7   266 F.3d 979, 988 (9th Cir. 2001) (noting that the court need not accept conclusory
8   allegations, unwarranted deductions of fact, or unreasonable inferences as true). "A
9   claim has facial plausibility when the plaintiff pleads factual content that allows the
10  court to draw the reasonable inference that the defendant is liable for the misconduct
11  alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare
12  recitals of the elements of a cause of action, supported by mere conclusory statements,
13  do not suffice." *Id.*; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on motion
14  to dismiss, a court is "not bound to accept as true a legal conclusion couched as a
15  factual allegation") (cited approvingly in *Twombly*, 550 U.S. at 555). And while "[t]he
16  plausibility standard is not akin to a probability requirement," it does "ask[] for more
17  than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678
18  (internal quotation marks and citation omitted). "[T]he pleading standard Rule 8
19  announces does not require 'detailed factual allegations,' but it demands more than an
20  unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).
21  In determining plausibility, the Court is permitted "to draw on its judicial experience
22  and common sense." *Id.* at 679 (citation omitted).

23  <u>B. Intentional Interference with Contractual Relations</u>

24  In California, intentional interference with contractual relations requires a
25  plaintiff to show (1) a valid contract between plaintiff and a third party; (2) defendant's
26  knowledge of this contract; (3) defendant's intentional acts designed to induce a breach
27  or disruption of the contractual relationship; (4) actual breach or disruption of the
28  contractual relationship; and (5) resulting damage. *Quelimane Co., Inc. v. Stewart Title*

1   *Guar. Co.*, 19 Cal. 4th 26, 55 (1998) (citation and quotation marks omitted).

2   C. California Business & Professions Code §§ 17200, *et seq*

3        California's Business and Professions Code authorizes actions against persons

4   or business entities who engage in "unfair competition," which includes "any unlawful,

5   unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

6   advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of

7   Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code

8   §§ 17200 *et seq.*; *Quelimane Co.*, 19 Cal. 4th at 42. In this case, Plaintiff states that its

9   Section 17200 claim is premised on its claim for intentional interference with

10   contractual relations. (Opp'n at 1).

11                     **DISCUSSION**

12        FEG's Motion is based upon its contention that FFS has not provided sufficient

13   factual allegations with regard to whether FEG committed "intentional acts designed

14   to induce a breach or disruption of the contractual relationship." The Court notes that

15   because FFS concedes that its second cause of action is premised upon its first claim,

16   and no party contends that the second claim can survive if the first does not, a failure

17   to state a claim as to the first cause of action requires dismissal of the entire action.

18        FEG contends that the only facts alleged by FFS are that "FEG had a meeting

19   with some potential agents, and now those agents are working with FEG." (Mot. at 5).

20   FEG discusses several of the allegations in an effort to point out their shortcomings.

21   For instance, it notes that in alleging that Moua and Lee had talks with FEG in April

22   2014 in paragraph 20, FFS does "not allege that FEG encouraged the breach of the SC

23   Agreement, and does not preclude the possibility of FEG, [sic] discouraging any such

24   breach." (*Id.* at 2). It also points out that FFS does not allege that FEG was doing any

25   soliciting at Moua and Lee's May 10 meeting, or that it even knew about the meeting.

26   (*Id.* at 2-3). FEG also discusses portions of FEG's letter, which FFS attached to the

27   Complaint as an exhibit, which FFS did not quote. (*Id.* at 3). Specifically, FEG

28   highlights that the letter states that "FEG did not pursue Mr. Moua, or induce Mr.

1  Moua and his team to join us" and that FEG complied with all standards in the
2  industry.  (*Id.*)  FEG states that FFS's allegations for each cause of action merely list
3  the elements of the cause of action.  (*Id.* at 3-4).

4      FEG cites at length to the pleading requirements laid out in *Bell Atlantic Corp.*
5  *v. Twombly* and *Ashcroft v. Iqbal*.  (*Id.* at 6-7).  FEG contends that FFS "needs to plead
6  factual content that allows the court to draw the reasonable inference that the defendant
7  is liable for the misconduct alleged," but that the Complaint is "devoid of anything but
8  the thinnest, most conclusory factual allegations."  (*Id.* at 8).

9      In response, FFS asserts that it has pled sufficient contents to fulfill the
10 requirements of Rule 8(a) and allow the Court to draw the reasonable inference that
11 FEG is liable for the misconduct alleged.[1]  (Opp'n at 1, 3).  FFS  restates the chief
12 allegations of the Complaint.  (*Id.* at 1-2).  It quotes from the Ninth Circuit's decision
13 in *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014):

> First, to be entitled to the presumption of truth, allegations in a complaint
> or counterclaim may not simply recite the elements of a cause of action,
> but must contain sufficient allegations of underlying facts to give fair
> notice and enable the opposing party to defend itself effectively. Second,
> the factual allegations that are taken as true must plausibly suggest an
> entitlement to relief, such that it is not unfair to require the opposing party
> to be subjected to the expense of discovery and continued litigation.

18 *Id.* at 996 (citation omitted).

19     FFS argues that the allegations of the Complaint give FEG notice of its claims,
20 as evidenced by FEG's motion. (Opp'n at 3).  It contends that the Motion demonstrates
21 that FEG understands what FFS is alleging and that it has sufficient information to
22 defend itself. (*Id.*)  For instance, it points to FEG's comments regarding paragraph 20
23 as proof that FEG was able to identify "potential defense that it can raise at an
24 appropriate time." (*Id.* at 3-4).

---

[1]The Court notes that Plaintiff refers to the Motion to Dismiss as "dilatory." (Opp'n at 1).  However, Plaintiff does not pursue this argument or ask the Court to deny the Motion on this basis.  Plaintiff did not move for default judgment.  Review of the docket indicates that two "Proof of Service Summons & Complaint" documents were filed with respect to FEG.  A June 26, 2014 filing indicated personal service on June 24 (Docket No. 4) and a July 7, 2014 filing indicated personal service on another individual on June 30 (Docket No. 6).  The Motion was filed on July 15, 2014.

1    FFS contends that the allegations are also sufficient to show that it is plausibly

2    entitled to relief. (*Id.* at 4-5). FFS contends that it did not need to allege that FEG

3    encouraged a breach, and notes that FEG does not "deny or attempt to explain" the

4    meeting with Moua and Lee in its motion. (*Id.* at 5). It points out that FEG has not

5    offered alternative explanations, and merely suggests that the allegations do not

6    preclude the possibility that FEG discouraged a breach. (*Id.* at 7). FFS contends that

7    the "specific contents" of the conversation have yet to be ascertained, and that FFS

8    could only allege the events and circumstances of which it was aware when it filed the

9    Complaint. (*Id.* at 5). It argues that it has alleged enough to permit the Court to

10    determine that it is plausible, if not probable, that FFS could obtain relief after

11    discovery. (*Id.*)

12    FEG's reply contends that it offered an alternative explanation of the contact,

13    and that its explanation of events in the letter attached to the complaint is "much more

14    plausible that Plaintiff's allegation that FEG, with malice in its heart, and totally

15    unmindful of the damage that would result to its reputation in the community,

16    aggressively, affirmatively, and knowingly, interfered with a contract, and went after

17    FSS agents." (Reply at 2).

18    FFS also directs the Court to an unpublished Northern District of California

19    opinion, *Raymat Material, Inc. v. A&C Catalysts, Inc.*, No. C 130567 WHA, 2013 WL

20    5913778 (N.D. Cal. Oct. 31, 2013). There, the defendant filed a third-party complaint

21    in which it alleged that the third-party defendant had intentionally interfered with its

22    relationship with the plaintiff. *Id.* at *1. The district court found that the complaint

23    sufficiently stated a claim where the complaint alleged that the third-party defendant

24    with "full knowledge" of the agreement, engaged in negotiations intended to interfere

25    with the contract that existed between the plaintiff and the defendant. *Id.* at *3. The

26    complaint alleged that the third party-defendant had cancelled its purchase orders in

27    order to make it more difficult for the defendant to perform under the agreement with

28    the plaintiff, thereby allowing the third-party defendant to buy from the plaintiff

1  directly. *Id.*

2      Finally, FFS submits a copy of a District of Minnesota order granting a

3  temporary restraining order against Moua and Lee. (Davidson Decl., Ex. A). FEG

4  contends that Moua and Lee are not in privity with FEG and that the order has no

5  relevance. (Reply at 2).

6      Upon full review of the briefing, the Court determines that FFS has not alleged

7  sufficient facts from which this Court can conclude that it is plausibly entitled to relief.

8  FFS alleges that Moua, or Lee, or both talked with FEG about mass solicitation of FFS

9  contractors in violation of the SC Agreement. (Compl. ¶ 20). The Court agrees that

10 FFS need not necessarily provide details of the meetings with Lee or Moua.  FFS

11 presents no non-conclusory allegations from which this Court could infer that FEG was

12 aware of the SC Agreements or their contents during the April 2014 talks.  Indeed, it

13 is somewhat unclear whether FFS is alleging that FEG had knowledge at that time, as

14 the only basis for FEG's knowledge mentioned in the Complaint is the letter sent on

15 May 15, 2014.  To the extent FFS believes that misconduct can be inferred from the

16 very fact of the meeting under the circumstances, it does not make the factual

17 allegations about the circumstances to allow the Court to draw this inference.  The

18 Complaint does not allege that FEG was in any way involved, or even aware of,

19 subsequent solicitation efforts.  To the extent FFS seeks to hold FEG accountable for

20 actions after its letter, it fails to explain what "intentional actions" it believes took

21 place.  FFS alleges that FEG has indicated it will "continue its relationship" with

22 former FFS contractors, but FFS does not explain how this intentionally induces a

23 breach.  Although FFS presents a number of facts which might suffice to plausibly

24 allege that Moua and Lee breached the SC Agreement, this does not establish that FEG

25 committed any "intentional acts" to encourage them to do so.

26      FFS points to FEG's failure to deny or explain certain things in its Motion.

27 However, FFS provides no authority that allows a plaintiff shift the burden to the

28 defendant to provide detailed alternative explanations where the plaintiff's own

14cv1521

allegations are insufficient. FFS also suggests that FEG's comments regarding the shortcomings of paragraph 20 shows that FEG is able to identify defenses to raise at an "appropriate time." However, an "appropriate time" to raise such a defense is at the motion to dismiss stage. Finally, the Court does not believe that *Raymat Materials* compels a contrary result. Among other things, the *Raymat Materials* complaint alleged that the third-party defendant "willingly engaged Raymat despite its knowledge of the illegality of that engagement." 2013 WL 5913778, at *3. Here, FFS alleges only a conversation about mass solicitation, without alleging that FEG encouraged them to engage in a mass solicitation or clearly indicating whether it is alleging that FEG was aware that mass solicitation would constitute a breach.

Accordingly, the Motion to Dismiss is **GRANTED**. The action is **DISMISSED WITHOUT PREJUDICE** and FFS is given leave to amend. Any Amended Complaint must be filed within **twenty-one (21) days** of the date this Order is filed. This does not constitute leave to amend the pleading to add additional parties or causes of action.

   **IT IS SO ORDERED**.

Date: August 2*0*, 2014

HON. ROGER T. BENITEZ
United States District Judge

- 11 -

14cv1521